**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THOMAS R. BEAMER, | : | |
| | : | **Civil Action No. 1:06-cv-1982** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| POSSUM VALLEY MUNICIPAL | : | |
| AUTHORITY, | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Before the Court are cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure by Defendant Possum Valley Municipal Authority ("PVMA") (Doc. No. 37) and Plaintiff Thomas R. Beamer ("Beamer") (Doc. No. 41). The motions are fully briefed and are ripe for disposition. For the reasons that follow, the Plaintiff's motion will be denied and the Defendant's motion will be granted.

## I.     BACKGROUND

### A.  Factual Background[1]

Defendant PVMA is a municipal authority situated in Adams County Pennsylvania formed jointly by Menallen Township's Board of Supervisors and Bendersville's Borough Council. (Doc. Nos. 39 ¶ 1; 44 ¶ 2.) PVMA owns and operates a sewage treatment plant and water facility in Aspers, Pennsylvania, and also operates the Bendersville Water System in Bendersville, Pennsylvania. (Doc. No. 39 ¶¶ 4-7.) The PVMA is governed by a board of directors ("Board"), which is comprised of five members appointed by Bendersville and

---

[1] The following facts are undisputed unless otherwise indicated. (<u>See</u> Doc. Nos. 39, 49; 44, 46.)

Menallen.  The board does not perform the day-to-day operations at PVMA, but sets policy and approves business operations by majority vote at regular monthly meetings or periodic special meetings.  (Doc. Nos. 39 ¶¶ 9-11; 44 ¶¶ 5-6.)

Plaintiff Beamer is a resident of Pennsylvania and was employed by PVMA from July 15, 1986 through June 17, 2005.  (Doc. Nos. 39 ¶ 2; 44 ¶ 1.)  He was initially hired as a part-time operator trainee, but after obtaining his license for wastewater treatment, he became the Head Operator, a full time position paid on an hourly basis.  (Doc. Nos. 39 ¶¶ 14-16; 44 ¶ 7.)  In the mid 1990s, Beamer was promoted to the position of Plant Manager, a full-time, salaried position.  (Doc. Nos. 39 ¶ 16; 44 ¶ 8.)  As Plant Manager, Beamer reported to PVMA's Board at its monthly meetings.  (Doc. Nos 39 ¶ 17; 44 ¶ 9.)  During the relevant period for this lawsuit, June 2002 through May 2005, Beamer held this position.  (Doc. Nos 39 ¶ 17; 44 ¶ 9.)  Beamer's salary for this time period was $41,080, or $790 per week in 2002, $42,099.20 or $809.60 per week in 2003, $43,139.20 or $829.60 per week in 2004, and $44,720 or $860 per week in 2005.  (Doc. No. 39 ¶¶ 23, 25, 27, 29.)  Beamer was PVMA's only salaried employee; the PVMA's other employees were paid on an hourly basis for hours they actually worked, without regard to where the work was performed.  (Id. ¶¶ 34-36.)  PVMA's other employees were also paid time and a half for hours over 40 hours per week actually worked.  (Id.)  Beamer's salary was calculated each year using an hourly rate times 2,080 working hours in a year (52 weeks at 40 hours per week).  (Id. ¶ 22.)  Despite being a salaried employee, Beamer was eligible for additional compensation in the case of any emergency call after hours or on the weekend.  (Id. ¶¶ 31-32.)  He was paid for this time at a straight-time rate.  (Id. ¶ 33.)

It is clear from the record that Beamer had a large number of varied duties as Plant

Manager.  PVMA asserts that the Board delegated day to day operations to Beamer, who ran the water and sewage operations and, in the board's view, "pretty much had total control of the day to day operations of the [PVMA]."  (Id. ¶¶ 18-19.)  Typically, if the Board had a concern or problem with the operations it would go to Beamer to take care of it.  (Id. ¶ 20.)  Beamer admits that the board placed oversight of the physical and hands-on operation of water and sewage treatment in his hands and that he reported to the board on those items.  (Doc. No. 49 ¶ 18.)  He denies, however, that he ran all aspects of the daily operations of the PVMA or supervised all employees, asserting that Mary Yohe handled daily administrative duties without his supervision or direction.  (Id. ¶¶ 18, 37.)

Beamer was responsible for purchasing and safety at the PVMA operations.  (Doc. No. 39 ¶¶ 73-75.)  He had general authority, independent from the Board, to purchase supplies and materials, or hire outside vendors, suppliers, and contractors as needed if the expenditure did not exceed $5,000.  (Id. ¶¶ 73-74; see also Doc. No. 40-7 Deposition of Thomas Beamer at 34:8-13, 46:1-14 (hereinafter "Beamer Dep.").)  In the case of an emergency, such as homes not receiving water or a sewer main break, Beamer could spend whatever he deemed necessary to make the emergency repairs.[2]  (See Beamer Dep. at 33:18-34:7.)  He also had authority to make decisions on matters involving plant or employee safety without consulting with the Board.  (Id. at 36:1-3.)  While employees could make small supply purchases, such as paper or ink for a printer without approval, Beamer was generally responsible for approving large purchases, including lab equipment, chemicals, and testing gear.  (Id. at 43:1-44:11.)  Beamer also asserted that other

---

[2]  Beamer denies, without citation to the record, that he was ever authorized to make purchases that exceeded the $5,000 limit without direct approval from the Board (Doc. No. 49 ¶ 73.)  This unsupported assertion is contradicted by his own deposition testimony where he explains he could make such expenditures in an emergency (See Beamer Dep. at 33:18-34:7).

employees could make certain purchases on behalf of the PVMA if he was on vacation or could not be reached for approval.  (Id. at 36:9-22.)

Beamer attended all meetings of PVMA's Board in order to advise it regarding ongoing PVMA operations and business.  He had several attendant responsibilities in fulfilling this function.  For instance, Beamer was responsible for performing—or directing PVMA's office manager Mary Yohe ("Yohe") to perform—wage surveys to determine the appropriate annual wage increases for himself and other PVMA employees.  (Doc. No. 39 ¶ 71.)  He reviewed proposals for employee benefit plans, reporting his findings and recommendations about the best options to the Board.  (Id. ¶ 72.)  Beamer also had a significant role in preparation of the yearly budget.  After gathering information from PVMA staff, including Yohe and other employees, Beamer would prepare an initial annual operating budget for presentation to the Board and then to PVMA accountants.[3]  (Id. ¶ 80.)  He also worked with PVMA auditors to answer questions and complete PVMA's annual audit, which he approved as PVMA's manager.  (Id. ¶ 82.)  In performing these functions, Beamer worked directly with PVMA's accountant, solicitor, and engineer.  (Id. ¶ 81.)

Beamer was responsible for the day-to-day supervision of PVMA employees.  (Id. ¶ 37.) This responsibility included training operators and operator trainees (Id. ¶ 53), setting work schedules and approving adjustments to the employees' work hours (Id. ¶ 54), monitoring the quality of employees' work (Id. ¶ 55), approving time sheets and overtime requests before submission to the Board (Id. ¶¶ 58-60), and approving requests for vacation and leave (Id. ¶ 61).

---

[3]  In his response to the Defendant's statement of material facts, Beamer suggests, without citation to the record, that "he only provided relevant information regarding operation of the plant" in preparation of the budget. (Doc. No. 49 ¶ 80.)  Despite this, his own deposition testimony, along with other evidence in the record, clearly shows he had a much larger role in the process.  (Beamer Dep. at 37:19-40:8.)

Beamer also handled employee discipline and was the contact for general employee complaints and grievances.[4] (Id. ¶¶ 64-65.)  As the licensed head operator, he was directly responsible for the actions of his subordinates in ensuring that the sewage plant and water facilities were operated in accordance with state and federal regulations.  (Id. ¶¶ 78-79.)  Beamer also had a role in the hiring of new employees.  Beamer routinely provided his opinion and made recommendations to the Board when vacancies arose.  (Id. ¶¶ 66-67.)  The Board hired the applicant Beamer recommended in every recorded instance, including applicants John Plitt, Kimey Bucher-McDermott, Ginger Nolder, Jeff Taylor, and Mary Yohe.  (Id. ¶ 68.)

During the relevant time period, Beamer received compensation above his salary from PVMA.  (Id. ¶¶ 24, 26, 28, 30.)  Beamer claims that he was owed this additional compensation for emergency call outs and work at the Bendersville facility, which duties the Board considered beyond the scope of his regular work at the Aspers sewage and water facilities.  (See e.g. Beamer Dep. at 87:3-9.)  Beamer also received additional compensation through use of PVMA's credit card for personal purchases in an amount totaling $15,720.  (Doc. No. 39 ¶ 151.)  Beamer claims that he used the credit card for personal purchases to offset unused vacation time and unpaid overtime from his call-outs and work at the Bendersville facility.  (Beamer Dep. at 148:1-24.)  PVMA disputes that the Board approved of any compensation in excess of his salary.  (Doc. No. 39 ¶ 125.)  Indeed, the Board made operational policy changes in early 2005 to ensure that Beamer would not be paid additional compensation beyond his annual salary.  (Id. ¶ 132.)

---

[4]  Beamer attempts to deny, without citation to the record, that he ever actually exercised his authority to discipline employees (Doc. No. 49 ¶ 63), but he admits in his own deposition that he did impose discipline and at least once did so without needing to consult with the Board.  (Beamer Dep. at 54:1-55:2.)  Other evidence in the record also contradicts Beamer's unsupported assertion.  (See Doc. No. 40-5 Deposition of Mary Yohe at 34:5-22 (hereinafter "Yohe Dep.").)

Beamer subsequently resigned his position as Plant Manager, effective on June 17, 2005.  (Id. ¶ 133.)

### B.  Procedural Background

Beamer filed his complaint in this action on October 6, 2006, alleging violation of the FLSA as his sole cause of action.  (Doc. No. 1.)  On March 16, 2007, PVMA answered Beamer's complaint and asserted a counterclaim against him for reimbursement of unearned salary and also for charges he made on PVMA's business credit card.  After discovery was completed, the parties filed the present motions for summary judgment.  (Doc. Nos. 37, 41.)

### C.  Standard of Review

Both parties have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of

evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## II.    DISCUSSION

Beamer has brought his claim for overtime compensation under The Fair Labor Standards Act ("FLSA"), which provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The statute provides several exemptions to this general requirement, however, including for employees that act in a "bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). These overtime exemptions are construed

narrowly against the employer, and it is the employer's burden to establish its employees come within the scope of the claimed exemption. Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006). Under the FLSA, the Secretary of Labor is given authority to promulgate regulations defining and interpreting the exemptions; these regulations, "which were promulgated using notice-and-comment procedures, have controlling weight unless found to be arbitrary, capricious, or manifestly contrary to the statute." Smith v. Johnson and Johnson, 593 F.3d 280, 284 (3d Cir. 2010); see also Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

PVMA argues that Beamer was not entitled to overtime pay because he fell into either the executive or administrative exemption provided by the statute. In their briefs, both parties appear to have cited and relied on the most recent Labor regulations in evaluating the applicability of these exemptions, 29 C.F.R. § 541.100 for the executive exemption and § 541.200 for the administrative exemption. (Doc. Nos. 38 at 4, 11; 42 at 5, 8.) These regulations have only been applicable since August 23, 2004. Before the 2004 amendments, the Labor regulations provided a long and short form test to evaluate bona fide executive and administrative employee status, depending on the employee's income level. See Martin, 940 F.2d at 901; see also 29 C.F.R. § 541.1 (2004) (executive); 29 C.F.R. § 541.2 (2004) (administrative). While the parties appear to ignore the effect of the prior regulations, Beamer is seeking overtime compensation from June 2002 through May 2005, a time period straddling the effective date of the new 2004 amendments. In evaluating a similar scenario, the Third Circuit has noted that the regulations promulgated by the Labor Department are not generally retroactive. See Davis, 453 F.3d at 557 n.2 ("Both the parties and the District Court have

proceeded on the assumption that a this regulation applies to all the overtime at issue in this case.

. . . We note, however, that 'a statutory grant of legislative rulemaking authority will not, as a

general matter, be understood to encompass the power to promulgate retroactive rules . . . .");

Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 369 (7th Cir. 2005) (same); see also

Davis v. Mountaire Farms, Inc., 551 F. Supp. 2d. 343, 348 (D. Del., 2008) ("[T]he old

regulations govern the time period prior to their amendment on August 23, 2004.").

Because the parties have not addressed this issue, the Court is left to consider the

appropriate manner to proceed with the analysis in this case. Under the prior regulations, as

mentioned, there was both a long and short test for assessing whether an employee qualified as a

bona fide administrative or executive employee. See Martin, 940 F.2d at 901; Davis 551 F.

Supp. 2d. at 346. For both exemptions, the short test was applicable to any employee

compensated at a rate "not less than $250 per week." 29 C.F.R. §§ 541.1(f); 541.2(f) (2004).

Because both parties agree that Beamer was compensated in excess of that amount for the

relevant time period, the short test would apply. The short tests for executive and administrative

exemptions are similar to the formulations found in the current regulation, but they are not

identical; the current regulations require a higher weekly salary and add some additional

elements to the analysis. Therefore, as other courts have found, the amended regulations are at

least as protective of employees as the former short test. See Beauchamp v. Flex-N-Gate LLC,

357 F. Supp. 2d 1010, 1013 n.3 (E.D. Mich. 2005); see also Smith v. Johnson and Johnson, 2008

WL 5427802 *9, (D.N.J. 2008) (finding amended DOL regulations intended to retain much of

the spirit of the pre-2004 regulations) *aff'd*, 593 F.3d 280, 286 (3d Cir. 2010).

Having considered this authority and reviewed the current and former regulations, the

Court finds that it may proceed with its analysis under the current regulations as briefed by the parties. Determining the applicability of the potential exemptions in this case turns on the same factors under both current and former regulations, so the Court's ultimate determinations will not be effected.

**A. Executive Exemption**

As mentioned above, employees that act in a bona fide executive capacity are exempt from the overtime wage requirements of the FLSA. The Labor regulations provide that this exemption applies to any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100. Management activities are further illustrated by the regulation:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be

bought, stocked and sold; controlling the flow and distribution of
materials or merchandise and supplies; providing for the safety and
security of the employees or the property; planning and controlling
the budget; and monitoring or implementing legal compliance
measures.

Id. § 541.102

In applying this standard, "courts have generally recognized that since the requisite

characteristics of executive employment are stated in the conjunctive rather than the disjunctive,

it is necessary . . . that the employee be shown to meet all of the administrative requirements for

such exemption." Davis, 453 F.3d at 557.

PVMA advances strong arguments that Beamer qualifies as an exempt executive

employee, but it appears that genuine factual disputes would exist on the issue of whether

Beamer "customarily and regularly" directed the work of two or more full-time employees or

their equivalent. The record clearly shows that PVMA had a fluctuating workforce of employees

throughout the relevant time-period, most working variable part-time hours. PVMA largely

relies on a declaration by Chad Smith, PVMA's record custodian since April 20, 2006, to

establish that Beamer supervised a sufficient number of part-time employees to satisfy the

regulations. (Doc. No. 40-10.) Beamer argues that Smith's statements are inadmissible hearsay

because he does not make them with personal knowledge. (Doc. No. 51 at 4 n.3.) While it is not

clear that Smith's declaration is entirely inadmissible hearsay, the Court must agree that there are

issues with the submission. It appears that some of Smith's assertions, such as his estimate of

each employee's average number of hours worked per week, go beyond the attached business

records and should not be considered by the Court. See Fed. R. Civ. P. 56(e)(1). The Court

need not determine this issue, however, because Beamer was employed in an administrative

capacity.

**B.  Administrative Exemption**

Employees that act in an administrative capacity are exempt from the overtime requirements of the FLSA.  29 U.S.C. § 213(a)(1).  The Labor regulations provide that an employee must meet three requirements to fall under this exemption:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.  In applying this standard, courts have generally recognized that the employee must be shown to meet all of the administrative requirements for an exemption to apply.  See Davis, 453 F.3d at 557.  Because Beamer concedes that he meets the first requirement of a salary of not less than $455 per week (Doc. No. 51 at 10), the Court will turn to the remaining elements of the administrative exemption formulation.

**1.  Work Directly Related to Management or General Business Operations**

The second element of the administrative exemption requires that an employee's primary duty be work related to the management or general business operations of the employer.  29 C.F.R. § 541.200(a)(2).  In further defining this element, the DOL regulations provide that the "employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  The regulation

goes on to provide some examples of employee functions that satisfy this requirement:

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

PVMA argues that the record shows that Beamer's duties fit this element because his primary function was to manage the Authority's employees and facilities and administer PVMA's business operations.  (Doc. No. 38 at 12.)  PVMA further asserts that the majority of the manual and testing work was done by the trainees and operators that were Beamer's subordinates.  (Id.)  Beamer argues that the "vast majority" of his duties consisted of labor or ordinary inspection work such as "sampling, testing, and treating water and sewage, responding to complaints/problems of customers, checking up on work performed by the labor force, and other out-of-office work," which would not qualify as exempt work.  (Doc. Nos. 42 at 9; 51 at 10.)

Reviewing these elements and the illustrations provided by the DOL regulations, it is clear that Beamer performed both exempt and non-exempt functions at PVMA.  As Beamer argues, he was responsible for some amount of the more mechanical duties at PVMA.  At his deposition, Beamer testified that, even as the Plant Manager, he would sometimes be responsible for tasks such as "pulling sewage pumps, doing pump repairs, repairing underground electrical splices, truck repairs, cleaning up waste spills, lab work, inventorying chemicals, [and] updating records . . . ."  (Beamer Dep. at 60:22-61:8.)  Of course, the described manual labor tasks would

not fall under the exempt work standard. 29 C.F.R. § 541.200(a)(2). Additionally, the testing and lab work performed by Beamer to satisfy regulatory water and sanitation standards, though complex, is not considered an exempt activity. Id. § 541.203(j).

Beamer also performed several functions that were directly related to assisting with the running or servicing of the business and which fall within the examples provided by the Labor regulations. He handled personnel management for PVMA, which included: training and supervising operators and operator trainees (Doc. No. 39 ¶ 53), setting work schedules and approving adjustments to the work hours of employees (Id. ¶¶ 54, 56; see also Beamer Dep. at 49:17-20.), approving requests for vacation and leave (Doc. No. 39 ¶ 61; see also Beamer Dep. at 50:7-12), handling employee discipline and general employee complaints and grievances (Doc. No. 39 ¶¶ 64-65; see also Beamer Dep. at 50:17-21), performing—or directing Mary Yohe to perform—wage surveys to determine the appropriate annual wage increases for himself and other PVMA employees (Id. ¶ 71), and reporting to the Board as to his appraisal of an employee's work performance (Beamer Dep. at 55:15-25).[5] Beamer also had a role in human resources in which he met with, appraised, and recommended applicants to the Board for hire. He routinely provided his opinion and made recommendations to the Board when vacancies arose. (Id. ¶¶ 66-67; see also Beamer Dep. at 52:2-14.) The Board followed Beamer's recommendation in every instance, including applicants John Plitt, Kimey Bucher-McDermott, Ginger Nolder, Jeff Taylor, and Mary Yohe. (Doc. No. 39 ¶¶ 66-68.)

Beamer had a significant role in PVMA's financial matters. He periodically reviewed

---

[5] Some of these duties would also qualify as exempt management activities. The Labor regulations recognize, however, that some exempt activities illustrated under the administrative exemption may also be performed by employees who would qualify for another exemption. See 29 C.F.R. § 541.201(b).

14

PVMA's financial status with its accountant and, in times when PVMA lacked sufficient resources, would arrange for additional financing with the bank for eventual review and approval by the Board.  (Beamer Dep. at 34:18-35:9.)  Along with his periodic review of the finances, Beamer was also involved in preparation of PVMA's yearly budget.  After gathering information from PVMA staff, including Yohe and other employees, Beamer would prepare an initial annual operating budget detailing PVMA's debt service obligations, repair needs, and potential capital improvements.  (Doc. No. 39 ¶ 80; see also Beamer Dep. at 37:19-40:8.)  After the budget was prepared, Beamer would present it to the Board for review and then finally to PVMA's accountant.  (Id.)  Beamer worked with PVMA auditors to answer questions and complete the PVMA's annual audit, which he approved as PVMA's manager.  (Doc. No. 39 ¶ 82.)  Additionally, Beamer participated in the selection process for PVMA's employee benefits scheme.  He reviewed proposals for employee benefit plans, reporting his findings and recommendations about the best options to the Board.  (Id. ¶ 72.)

Finally, Beamer was responsible for making decisions on matters involving plant or employee safety, even without consulting with the Board.  (Beamer Dep. at 36:1-3.)  He also had general authority, independent from the Board, to purchase supplies and materials, arrange for equipment repair, and hire outside vendors, suppliers, and contractors as needed if the expenditure did not exceed $5,000.  (Id. ¶¶ 73-74; see also Beamer Dep. at 34:8-13, 46:1-14.)  In the case of an emergency, such as homes not receiving water or a sewer main break, Beamer could spend whatever he deemed necessary to make the repairs.  (See Beamer Dep. at 33:18-34:7.)

### 2.  Primary Duty

Because Beamer clearly performed both exempt and non-exempt work at PVMA, the Court must assess whether his exempt functions were his "primary duty." Labor regulations provide several considerations for the Court to take into account when undertaking this analysis:

> (a) The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> (b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700. Construing the similar former regulations defining "primary duty," the Third Circuit has held that as a "general rule of thumb" an employee's primary duty is typically one on which he or she spends a majority of his or her time. See Reich v. Gateway Press, Inc., 13 F.3d 685, 699 (3d Cir. 1994). Despite this, time spent on exempt duties is not the sole test; the Court must consider other important factors highlighted in the regulations, such as the relative importance of exempt duties as compared to other types of duties, freedom from supervision, and pay relative to other employees performing similar non-exempt work. Id.; see also Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1145-46 (3d Cir. 1983) (holding that

"a sufficient presence of 'pertinent factors' (other than time spent in managerial duties)"
demonstrated management as the employees' primary duty even where managerial duties
consumed less than 50% of the employees' time).

### a. Time Spent Performing Exempt Work

The first factor to consider is time spent on exempt and non-exempt activities.  Beamer
indicated at his deposition that he would have some difficulty estimating the amount of time he
spent on any certain job activity as a Plant Manager, but did estimate that he spent only about
20% of his time on the non-exempt hands-on lab testing and lab work as opposed to managerial
or administrative tasks.  (Beamer Dep. at 60:16-61:8.)  Beamer's estimate is corroborated by Jeff
Taylor, an operator at the plant for the relevant time-period, who testified at his deposition that
he personally performed 80 to 85 percent of the sampling and testing during the relevant time
period.  (Doc. No. 40-6 Deposition of Jeff Taylor at 58:13-20 (hereinafter "Taylor Dep.").)  As
Beamer points out, his 20% estimate was given in response to a question asking specifically
about testing and lab-work; he claims that it does not account for other non-exempt work he
occasionally performed for PVMA.  (Doc. No. 49 ¶ 88.)  Besides testing and lab work, however,
Beamer's only other non-exempt duties apparent from the record are some simple records
updating and periodic manual labor, such as "pump repair, repairing underground electrical
splices, truck repairs, [and] cleaning up waste spills."  (Beamer Dep. at 61:3-8.)  Beamer points
to no evidence in the record that would suggest what percentage of his time he spent on these
tasks.  In fact, there is evidence that he spent his time performing "mostly all administrative
work."  (Taylor Dep. at 23:17-21.)  As such, even considering the evidence in a light most
favorable to Beamer, the time factor is at best neutral as to whether Beamer's non-exempt or

exempt activities were his primary duty.

### b. Relative Importance of Exempt Duties

The Court must next consider the relative importance of Beamer's exempt duties as compared to his non-exempt duties. In evaluating relative importance of duties, the Court must assess whether Beamer's exempt administrative duties or non-exempt technical and manual duties were more critical to the successful operation of the enterprise. See Guthrie, 722 F.2d at 1146 (citing Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982)). Here, Beamer's non-exempt duties were clearly important to PVMA's operation. Beamer's testing and lab work had to be performed to satisfy government regulations about water quality. The extent and importance of Beamer's out-of-office manual labor duties is less clear, but equipment maintenance and repair would be important functions for the continued operation of PVMA's water and sewage facilities.

Despite the importance of his non-exempt duties, the Court finds that the record clearly shows Beamer's exempt duties were relatively more critical to the success of PVMA. Though testing and lab work were essential to PVMA's operations, it is clear that Beamer's subordinates, the operators and operator trainees, were primarily responsible for these functions considering Beamer usually only spent 20% of his time on these activities. Accordingly, Beamer's personnel management and human resource responsibilities such as setting work schedules, training and evaluating employees, and handling complaints were critical to PVMA's operations, even more so because the record reveals no other employees that handled these critical day-to-day functions at the PVMA facilities. It is also clear from the record that employee turnover was high at the PVMA in part because of the use of part-time weekend and holiday employees to accommodate

the odd working hours.  (Beamer Dep. at 26:13-27:8; 53:19-25.)  In that context, Beamer's role in appraising potential employees and making recommendations to the Board for new hiring was obviously essential to keep a sufficient number of qualified individuals on staff.  Beamer's responsibility for employee and plant safety were also clearly important to PVMA's successful operation, as the record demonstrates the facilities presented some potential hazards. Additionally, though other employees could make smaller purchases in his absence, Beamer was primarily responsible for keeping PVMA's operations supplied with the essential tools, equipment, and supplies to run the facilities and office.  He also hired vendors, suppliers, and contractors to do additional work for PVMA as necessary.  Finally, Beamer played a unique and critical role in PVMA's financial and business planning.  He worked on the yearly budget and audit, gathering information, estimating liabilities, and planning for potential capital improvements.  He even periodically arranged for financing when PVMA needed additional capital to continue operations.  (See Beamer Dep. at 35:4-7.)

Given the scope and critical nature of Beamer's exempt duties, the Court finds they were relatively more important than the non-exempt technical and manual duties he performed. Therefore, this factor weighs in favor of finding that Beamer's primary duty consisted of work directly related to the management or general business operations of the employer.

### c.  Freedom from Direct Supervision

The next factor the Court must consider is the employee's relative freedom from direct supervision.  The record reveals that Beamer was clearly in charge of typical day-to-day operations at PVMA and had little direct supervision.  The PVMA Board met at monthly

meetings and individual members would stop by the office occasionally to sign payroll checks.[6] (Doc. No. 39 ¶ 12.)  Accordingly, Beamer was the most senior individual working for PVMA on a day to day basis.  (See Beamer Dept at 32: 18-21.)  He typically set his own hours.  (Doc. No. 39 ¶ 57; see also Beamer Dep at 71:21-25.)  He was also responsible for approving all of the time sheets and overtime of PVMA employees, including his own, prior to payroll being prepared.  (Doc. No. 39 ¶¶ 58-60.)  Though Beamer asserts that the Board had final authority to approve time sheets and payroll (Doc. No. 49 ¶ 58), there was no official time card punch-in system at PVMA until the very end of Beamer's employment; employees kept track by entering their time on a time-sheet (Beamer Dep. at 74:4-78:11).  This system would have left PVMA's Board with little ability to undertake a close review of an employee's claimed time.  Along this same line, much of Beamer's oversight of PVMA employees was done informally or verbally, limiting the amount of official review of his decisions that the Board could even undertake.  (See e.g., Beamer Dep. at 32: 9-17 (employee evaluations); 50: 7-16 (time-off requests and work schedules).)

Considering the above, though Beamer reported to the Board monthly, the Court finds that he exercised his job responsibilities with very little regular supervision.  See Guthrie, 722 F.2d at 1146 ("While there are higher authorities than the section foremen at the mine, the foremen are essentially on their own when working underground, as they do for most of the day; moreover, about half the time, they are persons on the property in highest authority.") (internal

---

[6] In his response to the Defendant's assertion that this is an undisputed material fact, which it supports with citation to the record, Beamer states that it is "demurred in that Plaintiff has no actual knowledge of the frequency with which Board members attempted to fulfill their duties." (Doc. No. 49 ¶ 12.)  Beamer does not point to any evidence in the record suggesting a genuine dispute of fact exists on this point, however.  Additionally, Beamer's own deposition testimony supports the Defendant's assertion.  (See Beamer Dep. at 42:7-12; 79:15-80:3.)

citations omitted).  As such, this factor weighs in favor of finding that Beamer's exempt responsibilities were his primary duty at PVMA.

### d.  Comparative Salary

The last factor the Court will consider is the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.  For this factor, the record shows that Beamer was paid at a significantly higher rate than other PVMA employees who were performing similar kinds of non-exempt work.  (Doc. No. 40-10 Att. 2 at 3 (hereinafter "Wage Chart").)  For instance, Beamer's salary in 2004 was calculated based on a $20.74 hourly rate multiplied by 2,080 working hours in a year.  (Id.; see also Doc. No. 39 ¶¶ 22, 27.)  By comparison, PVMA's office manager Mary Yohe, whom Beamer asserts basically ran all PVMA administrative matters on her own without supervision (Doc. No. 49 ¶ 47; see also Beamer Dep. at 32:1-5), was paid at a rate of $13.25 per hour for that same period (Wage Chart).  Jeff Taylor, a full-time, licensed operator for PVMA, who performed 80% to 85% of the testing and lab work, was paid at a rate of $13.57 for the same time period. (Id.)  Reviewing the Wage Chart, it is clear that Beamer was paid at a much higher rate than all other PVMA employees during the entire relevant time period for this matter.  Accordingly, this factor weighs in favor of finding that Beamer's exempt responsibilities were his primary duty at PVMA.

Considering all of the above, the Court finds that the evidence in the record demonstrates that Beamer's primary duty was the performance of office or non-manual work directly related to the management or general business operations of PVMA.

### 3.  Exercise of Discretion and Independent Judgment

The third element of the administrative exemption requires that the employee's primary duty include the exercise of discretion and independent judgment with respect to matters of significance. C.F.R. § 541.200(a)(3). The Labor regulations provide that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). In assessing whether an employee's duties meet this criteria, the Court should consider all circumstances in the particular employment situation before it, including:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id. § 541.202(b). Employees can exercise discretion and independent judgment in these circumstances by formulating and offering recommendations for action rather than by actually taking action. Id. § 541.202(c). While implying that an exempt administrative employee is free from immediate direction or supervision to make independent decisions, the standard does not require that the employee have unlimited authority; employees can exercise discretion and

independent judgment even if their decisions or recommendations are subject to review at a higher level.  Id. § 541.202(c).

An employee's work does not meet this standard where his or her duties are "mechanical, repetitive, recurrent or routine," such as recording or tabulating data or in the performance of clerical and secretarial work.  Id. § 541.202(e).  Additionally, the employee's independent discretion and judgment must be more than use of a skill in applying "well-established techniques, procedures or specific standards described in manuals and other sources."  Id.

Beamer argues that he does not meet this requirement because he only had limited discretionary authority.  Despite his ability to make certain decisions and provide advice based on his knowledge of Government regulations, he asserts that the Board had final authority over all business aspects of PVMA.  (Doc. Nos. 42 at 9; 51 at 11.)  He further cites to 29 C.F.R. § 541.202(c), suggesting that Beamer's discretion was restricted to skill in applying well-established techniques or simple routine work.  (Id.)  PVMA argues that Beamer's duties clearly show the requisite discretion and independent judgment required by the DOL regulations.  (Doc. No. 38 at 13.)

The Court must reject Beamer's contention that his use of discretion was limited to use of skill in applying well-established techniques, or that his work was limited to recording or tabulating data.  As the above discussion makes clear, Beamer's primary duties line-up closely to the illustrations provided by the Labor regulations.  He affected, interpreted, and implemented the Board's policies and operating practices in his position as most senior official running the daily operations at PVMA.  He clearly affected PVMA's operations to a substantial degree with his personnel management, budget preparation, and assistance with the yearly audit.  He had

authority to bind PVMA in matters that could have had a significant financial impact, such as by purchasing supplies, engaging vendors, or hiring outside contractors for up to $5000 without approval from the Board. He frequently provided expert advice to the Board and his recommendations were followed. This is shown by the Board accepting his hiring recommendations for new employees in every recorded instance, including his recommendations for John Plitt, Kimey Bucher-McDermott, Ginger Nolder, Jeff Taylor, and Mary Yohe. He was involved in planning the long-term and short-term business objectives of PVMA, as shown by his role in the budget process. Finally, Beamer was also was responsible for representing the company in handling complaints and resolving grievances. Beamer was the main contact at PVMA for employee grievances or complaints and, as he admits in his briefing on this motion, he also frequently responded to the complaints and problems of PVMA customers. (Doc. Nos. 42 at 9; 51 at 10.) Accordingly, the Court finds, even considering the evidence in a light most favorable to the Plaintiff, that Beamer's primary duty included the exercise of discretion and independent judgment with respect to matters of significance.

Considering all of the above, PVMA has shown that Beamer meets all of the requirements of 29 C.F.R. § 541.200, satisfying its burden to establish he comes within the scope of the administrative exemption. Accordingly, the Court finds that Beamer was employed in a bona fide administrative capacity; PVMA's motion for summary judgment will be granted and Beamer's denied on this claim.[7]

## C. Counterclaim

As mentioned above, PVMA has asserted a counterclaim against Beamer for

---

[7] Because the Court finds that Beamer is employed in a bona fide administrative capacity, the Court will not address PVMA's further arguments for dismissal of his claims for overtime compensation.

reimbursement of amounts they claim he misappropriated during his employment. (Doc. No. 21.) PVMA's counterclaim seeks reimbursement for both: (1) Beamer's personal charges on the business credit card, and (2) allegedly unauthorized and unearned overtime compensation that Beamer procured from PVMA during his employment. (Doc. No. 21 ¶¶ 45, 46.) Beamer has moved for summary judgment on these counterclaims. (Doc. No. 41.) Beamer argues generally that the only evidence in the record as to the hours he worked are his time-sheets, which PVMA's Board consistently approved with the included compensation for hours worked over his salary. (Doc. No. 42 at 11.) Beamer also argues that PVMA already deducted the amounts due on the business credit card from his pay. (Doc. No. 42 at 12.) Beamer therefore contends that "any amount owed by Plaintiff as a result of personal use of the business credit card was repaid." (Id. at 13.)

The Court must reject Beamer's contention that summary judgment is appropriate on PVMA's counterclaim. Considering the record, the Court finds that genuine issues of material fact remain in determining whether and to what extent Beamer may have inappropriately sought and received additional compensation above his salary. Beamer himself admits that he did not work all of the hours which were recorded on his time-sheets, though he justifies this by pointing to PVMA's after hour call in-policy. (Id. at 11.) Despite this, there is significant evidence in the record that Beamer claimed hours that he may not have been entitled to claim, such as time spent working at another job he had with Adams County. (See e.g. Doc. No. 39 ¶¶ 115-118.) As for Beamer's arguments that his credit card debts were fully repaid to PVMA by pay deductions, he

fails to point to any evidence in the record to support that contention.[8]  Additionally, it is unclear from the record whether any such deductions would have been legitimate in themselves.  (See Doc. No. 46 ¶ 23.)  Accordingly, Beamer's motion for summary judgment on this issue will be denied.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant PVMA's motion for summary judgment and deny Beamer's motion for summary judgment.  An order consistent with this memorandum will follow.

---

[8] In his statement of material facts, Beamer points to "Exhibit L" in his appendix as evidence of this assertion.  (Doc. No. 44 ¶ 23.)  As PVMA points out, there does not appear to be any Exhibit L filed in Beamer's appendix.  (See Doc. No. 45.)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS R. BEAMER,** | : | |
| | : | **Civil Action No. 1:06-cv-1982** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **POSSUM VALLEY MUNICIPAL** | : | |
| **AUTHORITY,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, this 24ᵗʰ day of March 2010, upon consideration of the motions for summary judgment by Defendant Possum Valley Municipal Authority (Doc. No. 37) and Plaintiff Thomas Beamer (Doc. No. 41), filed in the above-captioned matter, and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT**:

1. Defendant Possum Valley Municipal Authority motion for summary judgment (Doc. No. 37) is **GRANTED**. Beamer's claim for overtime compensation pursuant to the FLSA is **DISMISSED**

2. Plaintiff Thomas Beamer's motion for summary judgment is **DENIED**.

3. Because this order does not adjudicate all claims remaining in this action, the Clerk of Court is directed to withhold entry of judgment on the dismissed claim. Fed R. Civ. P. 54(b).

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania